IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FRED VASQUEZ, JR.,<br><br>                Petitioner,<br><br>   vs.<br><br>MIKE MCDONALD, Warden, High Desert State Prison,<br><br>                Respondent. | Case No. 2:09-cv-00295 (JKS)<br><br>MEMORANDUM DISPOSITION |

Petitioner, Jose Fred Vasquez, Jr., a state petitioner proceeding pro se, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Vasquez is currently in custody of the California Department of Corrections, incarcerated at the High Desert State Prison in Susanville, California. Respondent has answered.[1] Vasquez has filed a traverse.[2]

---

[1] Docket No. 9.

[2] Docket No. 11.

## I. FACTUAL BACKGROUND

The following factual background is taken from the reasoned decision of the California Court of Appeal in this case:

> A.G. had a boyfriend-and-girlfriend relationship with [Vasquez] beginning in September 2004. She claimed she ended it in January 2005 because [Vasquez] was controlling. Other witnesses testified she continued to be with [Vasquez] that spring.[3]
>
> [Vasquez] could not accept the breakup of the relationship and continued to follow A.G., leave threatening phone messages, and engage in several acts of violence. On March 30, 2005, A.G. ran into [Vasquez] at Long's Drugstore. He wanted to talk to her and waited outside. She ran away from him and he followed her in his car. She had to jump into the bushes to avoid being hit. A.G. ran to the office of the apartment manager. [Vasquez] followed; he was angry and yelling and had to be restrained. [Vasquez] was so angry he broke the sunroof on his car.
>
> A.G. moved in with her son. [Vasquez] continued to call and would wait in front for her. Concerned for the safety of her son's family, A.G. moved again. She moved in with a friend, Jack Lowas.
>
> On September 28, there was an incident where [Vasquez] came over and threw a sewer grate at the fence. A.G.'s father called the police and let them listen to the threatening messages [Vasquez] had left on his phone.
>
> Another time [Vasquez] followed A.G. while she was driving Jack's truck. At a stop light, [Vasquez] got out, broke the window on Jack's truck and told A.G. that Jack's blood was on her hands. When she got home, Jack was injured and on the ground. He was bedridden for three weeks.
>
> In early October, [Vasquez] went to Jack's home and called A.G. out. He told her he would kill her if she did not leave with him. She kicked him in the groin and got away. [Vasquez] then broke seven windows in the house. A.G. went to the police that evening and played some of the threatening messages from [Vasquez].
>
> On October 13, A.G. was at Jack's home with some other women. [Vasquez] called, angry. Another woman took the phone and argued with [Vasquez]. [Vasquez] came over and continued to argue with that woman, saying he would blow up the house. They then saw a fire on the side of the house and [Vasquez] sped off. When the police arrived, there was the smell of gas in the air and burnt grass. The police found remnants of a Molotov cocktail at the scene and a gas can in [Vasquez's] car.
>
> The prosecution also offered evidence of [Vasquez's] prior acts of domestic violence. R.M. testified she lived with defendant from May until August 1996, when she moved back home. When she returned to pick up her clothes, [Vasquez] choked her. He

---

[3] The jury acquitted [Vasquez] of stalking between January and March 2005, battery in March on someone with whom defendant had a dating relationship, and attempted kidnapping (Sic) in October.

2

came over to her parent's home, claiming they had dinner plans. R.M. went outside to talk to [Vasquez]; she told him she did not love him anymore. [Vasquez] said she was wrong. He told her not to call anyone in the house because he had a gun. The next thing she knew, she was by the flower bed. [Vasquez] had hit her, leaving a scar from her elbow to her wrist. Her father, E.S., came out and [Vasquez] hit him. E.S. lost consciousness and later had surgery for his eye socket and jaw.

The parties stipulated that [Vasquez] was convicted of the offenses against R.M. and her father.[4]

## II. BACKGROUND/ PRIOR PROCEEDINGS

On June 15, 2006, the district attorney filed second amended information number 05F09063, charging Vasquez with, in counts one and four, stalking (Cal. Penal Code, § 646.9(a)2); in count two, assault with a deadly weapon (Cal. Penal Code, § 245(a)(1)); in count three, battery on a person with whom defendant has a dating relationship (Cal. Penal Code, § 243(e)(1)); in counts five through eight, making criminal threats (Cal. Penal Code, § 422); in count nine, vandalism (Cal. Penal Code, § 594(a)); in count ten, attempted kidnapping (Cal. Penal Code, §§ 664/207(a)); in count eleven, possession of an explosive device (Cal. Penal Code, § 12303.3); and in count twelve, arson (Cal. Penal Code, § 451(d)).[5] As to count four, the information alleged that a temporary restraining order was in effect that prohibited the charged conduct.[6] The information also alleged that Vasquez had suffered a prior serious felony conviction (Cal. Penal Code, §§ 1170.12 and 667(a)-(i)), and he had served a prior prison term (Cal. Penal Code, § 667.5(b)).[7]

---

[4] Lodged Doc. 3, pp. 2-4. These facts are presumed to be correct under 28 U.S.C. § 2254. Vasquez has not challenged the veracity of these facts in his petition to this Court.

[5] Lodged Doc. 1, pp 177-82.

[6] Lodged Doc. 1, p. 178.

[7] Lodged Doc. 1, p. 181.

3

On June 20, 2006, a jury found Vasquez not guilty on counts one, three and ten, and guilty on the remaining counts.[8] As to count four, the jury found the temporary restraining order allegation to be true.[9] On July 14, 2006, the court found the prior serious felony conviction and prior prison term allegations to be true.[10] The court subsequently sentenced Vasquez to twenty-eight years and four months in prison.

On October 12, 2007, the California Court of Appeal affirmed the judgment in a reasoned decision.[11]

On November 21, 2007, Vasquez filed a Petition for Review in the California Supreme Court, which the court denied on January 3, 2008.[12]

On February 2, 2009, Vasquez timely filed a Petition for Writ of Habeas Corpus in this Court. Vasquez raises two claims for relief: 1) that the trial court improperly admitted evidence against him, and; 2) that his trial counsel was ineffective.

Respondent concedes that Vasquez has properly exhausted his claims in state court. Respondent raises no affirmative defenses.

---

[8] Lodged Doc. 1, p. 279-90.

[9] Lodged Doc. 1, p. 282.

[10] Lodged Doc. 1, p. 7; Lodged. Doc. 2, p. 616-20.

[11] Lodged Doc. No 3.

[12] Lodged Doc. 4.

III.  STANDARD OF REVIEW

Because Vasquez filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[14] The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[15] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[16] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent

---

[13] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[14] *Williams*, 529 U.S. at 412.

[15] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[16] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

must be objectively unreasonable, not just incorrect or erroneous.[17] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[18] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[19]

In applying this standard, this Court reviews the last reasoned decision by the state court,[20] which in this case was that of the California Court of Appeal. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[21]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state

---

[17] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[18] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[19] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[20] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[21] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

6

court decision was objectively unreasonable.[22] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[23]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[24]

## IV. DISCUSSION

In his petition to this Court, Vasquez raises two grounds for relief. In his first ground, Vasquez claims the trial court erred by admitting evidence of injuries that he inflicted on E.S. In his second ground, Vasquez claims his trial counsel was ineffective for failing to object to testimony concerning the uncharged assaults on Jack Lowas and E.S. According to Vasquez, the testimony was not admissible and, therefore, his counsel was ineffective for failing to object to it.

### GROUND I:

Vasquez alleges the trial court erred by admitting evidence of the injuries he inflicted on E.S. during the August 1996 altercation where Vasquez assaulted R.M. and E.S. The trial court allowed this evidence pursuant to California Evidence Code § 1109, which operates as an exception

---

[22] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[23] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[24] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

7

to the California Evidence Code ban on character evidence.[25] Under California Evidence Code § 1109, in a criminal action involving domestic violence, evidence of defendant's commission of other domestic violence may be admitted.[26] Vasquez acknowledges that any crime he committed against R.M. was admissible under § 1109; however, he contends that any injuries inflicted on E.S. did not qualify as "domestic violence," and were inadmissable under § 1109. As noted above, Vasquez must show that the state court decision to admit the evidence of his attack on E.S. was contrary to, or involved an unreasonable application of a Supreme Court holding.[27] Additionally, the holding cited must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[28]

---

[25] California Evidence Code § 1101 bars the admission of "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) . . . when offered to prove his or her conduct on a specified occasion."

[26] The term "domestic violence" is defined by § 13700 of the California Penal Code:
"Domestic violence" means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship. For purposes of this subdivision, "cohabitant" means two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship. Factors that may determine whether persons are cohabiting include, but are not limited to, (1) sexual relations between the parties while sharing the same living quarters, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) whether the parties hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship.

[27] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[28] *Early v. Packer*, 537 U.S. 3, 10 (2002).

8

The Supreme Court explicitly declined to rule on whether the admission of evidence of prior crimes violates the constitution.[29] Therefore, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'" as determined by the Supreme Court.[30]

To the extent that Vasquez's petition claims that the trial court and appellate court misapplied state law,[31] this issue is beyond the purview of this Court in a federal habeas proceeding. It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[32] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[33]

---

[29] *Estelle v. McGuire*, 502 U.S. 62, 75 & n. 5 (1991) ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime."); *See Alberni v. McDaniel*, 458 F.3d 860, 864-67 (9th Cir. 2006).

[30] *Carey,* 549 U.S. at 77 (2006) (alterations by the Court); *see Wright*, 552 U.S. at 127 (per curiam); *Kessee*, 574 F.3d at 678; *Moses,* 555 F.3d at 753-54 (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[31] It is not entirely clear that Vasquez is claiming the trial and appellate courts misapplied state law. However, in the interest of being thorough, this Court will address the issue.

[32] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws). *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle*, 502 U.S. at 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton,* 497 U.S. at 653 (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[33] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

In order to show that the state courts violated his constitutional rights by misapplying state law, Vasquez would have to demonstrate that "the action complained of . . . violate[d] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'"[34] In applying this general principle, Ninth Circuit precedents as well as the precedents of several sister circuits have concluded that it *could* apply to the introduction of propensity evidence.[35] Nevertheless, the precedents of federal appellate courts are irrelevant after ADEPA.[36] "[T]he Supreme Court has explicitly reserved consideration of the issue at hand in *Estelle*.[37] Thus, this Court is barred from determining whether the improper introduction of propensity evidence could rise to the level of a due process violation.[38] Vasquez's first claim is without merit.

GROUND II:

---

[34] *Alberni v. McDaniel*, 458 F.3d at 866 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).

[35] *Id.*

[36] *See id*.

[37] *Id*.

[38] This Court is mindful that the Ninth Circuit has held: "[W]hen faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law." *Alberni*, 458 F.3d at 865 (citing *Robinson v. Ignacio*, 360 F.3d 1044, 1057). Indeed, when dealing with a truly novel issue, such exploration of general principles might be appropriate. However, Vasquez has not asked this Court to do so. Furthermore, the issue presented in the present case is not a novel issue; the Supreme Court has expressly held that this is an "open question."
The circumstances of this case are more like those present in *Earp v. Ornoski*, 431 F.3d 1158, in which the Ninth Circuit declined to declare a constitutional principle as "clearly established" after the Supreme Court had expressly concluded the issue was an "open question." *Earp*, 431 F.3d at 1185. *Earp* effectively held that "the advent of AEDPA forecloses the option of reversing a state court determination because it conflicts with circuit law." *Id*.

Vasquez claims that his trial counsel was ineffective for failing to object to evidence of the uncharged assaults on E.S. and Jack Lowas. Vasquez raised this claim in his direct appeal to the California Court of Appeal, which denied it in a reasoned decision.[39]

Under *Strickland*,[40] to demonstrate ineffective assistance of counsel, Vasquez must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[41] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[42] Vasquez must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[43]

*Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[44] Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

---

[39] Lodged Doc. No. 3.

[40] *Strickland v. Washington*, 466 U.S. 668 (1984).

[41] *Id.* at 687.

[42] *Id.*

[43] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[44] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

11

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[45]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable- a substantially higher threshold." *Schriro, supra,* at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[46]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[47] Vasquez has not met this heavy burden.

### ASSAULT ON E.S.

The Court of Appeal held that the assault on E.S. was part of the domestic violence Vasquez committed against R.M. because "it placed R.M. 'in reasonable apprehension of imminent serious bodily injury' to herself and another, her father."[48] Accordingly, the Court of Appeal held that the evidence of Vasquez's assault on E.S. was properly admitted under § 1109 and Vasquez's counsel

---

[45] 466 U.S. at 689 (internal citations and quotation marks omitted).

[46] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[47] *See Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

[48] Lodged Doc. No. 3, p. 5.

12

was not ineffective for failing to raise a meritless objection.[49] Thus, Vasquez does not meet the second prong of *Strickland* because he is unable to show his trial counsel's failure to object to evidence of the assault on E.S. prejudiced him.

## ASSAULT ON JACK LOWAS

The California Court of Appeal held that the assault on Jack Lowas was part of the domestic violence Vasquez committed against A.G. because it placed A.G. "in reasonable apprehension of imminent serious bodily injury to himself or herself, or another."[50] The court then noted that A.G.'s testimony regarding the assault on Lowas was "probative to show defendant tried to control and intimidate A.G. through acts of violence and that his threats reasonably caused her to fear for her safety, an element of the charges of making criminal threats."[51] Accordingly, the Court of Appeal held that the evidence of Vasquez's assault on Lowas was properly admitted under § 1109 and Vasquez's counsel was not ineffective for failing to raise a meritless objection.[52] Thus, Vasquez does not meet the second prong of *Strickland* because he is unable to show his trial counsel's failure to object to evidence of the assault on Lowas prejudiced him.

---

[49] Lodged Doc. No. 3, p. 6. The court noted that Vasquez's counsel did object to the evidence as being unduly prejudicial under California Evidence Code § 352.

[50] Lodged Doc. No. 3, pp. 6-7. The court of appeal expressly found that Vasquez and R.M. were former cohabitants for purposes of California Penal Code § 13700. The court of appeal did not make a similar finding with respect to Vasquez and A.G. However, the court did note that Vasquez and A.G. had a "boyfriend-and-girlfriend" relationship, which would qualify as a "dating relationship" for purposes of California Penal Code § 13700. Indeed, implicit in the finding that Vasquez committed "domestic violence" against A.G. is a finding that California Penal Code § 13700 applied. Vasquez does not challenge this finding in his petition to this Court.

[51] Lodged Doc. No. 3, pp. 6-7.

[52] Lodged Doc. No. 3, p. 7.

This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[53] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Vasquez's case within the scope of *Andrade–Williams–Schriro*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Vasquez's second claim for relief is without merit.

---

[53] 28 U.S.C. § 2254(d).

V. CONCLUSION and ORDER

Vasquez is not entitled to relief under any ground raised in the Petition. Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[54] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[55]

The Clerk of the Court to enter judgment accordingly.

Dated: February 1, 2010.

          /s/ James K. Singleton, Jr.
     **JAMES K. SINGLETON, JR.**
         United States District Judge

---

[54] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[55] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.